UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MOSES BOB PESSIMA,<br><br>Plaintiff,<br><br>vs.<br><br>EMILY ALLEN, CHILD SUPPORT SPECIALIST; THE SUPERVISOR OF EMILY ALLEN, CHILD SUPPORT SPECIALIST SUPERVISOR - DIVISION OF CHILD SUPPORT; AND THE PROSECUTOR FOR CHILD SUPPORT, DIVISION OF CHILD SUPPORT;<br><br>Defendants. | 4:19-CV-04200-RAL<br><br><br>OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

Plaintiff Moses Bob Pessima, proceeding pro se, filed this 42 U.S.C. § 1983 lawsuit against Defendants Emily Allen, the "Supervisor of Emily Allen," and the "Prosecutor for Child Support." Doc. 1.  Pessima alleges that Defendants had him wrongfully arrested for failing to pay child support when he had done so.  Doc. 1.  Defendants moved for summary judgment, Doc. 27, and Pessima filed a brief in opposition, Doc. 31.  For the reasons explained below, this Court grants the Defendants' motion for summary judgment.

I.    **Facts**

The Defendants complied with Rule 56.1(A) of this Court's Civil Local Rules by filing a statement of material facts along with their motion for summary judgment.  Doc. 29.  Local Rule 56.1(B) requires the party opposing a motion for summary judgment to "respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response

and appropriate citations to the record." D.S.D. Civ. LR 56.1(B). All material facts that are not disputed by the nonmoving party are deemed admitted. D.S.D. Civ. LR 56.1(D); see also Fed. R. Civ. P. 56(e)(2) (saying that the court can consider a fact undisputed when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)"). This rule applies even when the nonmoving party is proceeding pro se. Johnson v. Kaemingk, 4:17-CV-04043-LLP, 2020 WL 1441713, at *1 (D.S.D. Mar. 23, 2020) (deeming facts admitted where a pro se plaintiff filed an opposition to the motion for summary judgment but did not comply with Local Rule 56.1(B)); Joe v. Walgreens Co/ILL, No. CIV 09-4144-RAL, 2010 WL 2595270, at *1 (D.S.D. June 23, 2010) (deeming facts admitted where pro se nonmoving party did not submit a statement of material facts or directly respond to the moving party's statement of material facts); see also Bunch v. Univ. of Ark. Bd. of Trs., 863 F.3d 1062, 1067 (8th Cir. 2017) (holding that litigant's pro se status did not excuse her from following district court's local rules).

Pessima filed a brief opposing summary judgment but did not respond to the Defendants' statement of undisputed material facts. Doc. 31. Although Pessima filed an affidavit along with his complaint, this affidavit is too conclusory to create a genuine issue of material fact.[1] Doc. 2. Because Pessima has neither submitted a statement of material facts nor responded directly to Defendants' statement of undisputed material facts, Defendants' statement of undisputed material facts is deemed admitted.

Allen is a child support specialist for the South Dakota Department of Social Services (DSS). Doc. 29 at ¶ 2. Christensen is her supervisor. Doc. 29 at ¶ 3. Pessima owes child support under a 2006 divorce decree and several judgments entered in state court. Doc. 29 at ¶¶ 5–7; Doc. 30 at ¶¶ 5–7. As allowed by state law, Pessima entered into a license agreement with DSS in

---

[1] This Court discusses Pessima's affidavit in more detail below.

November 2017 in which he agreed to pay $300 per month until all past due child support was paid in full. Doc. 29 at ¶ 10; Doc. 30-8.

Pessima failed to make timely monthly payments on multiple occasions. Doc. 29 at ¶¶ 12–19; Doc. 30-7. On March 7, 2019, Allen sent Pessima a letter notifying him that DSS had not received a payment from him since January 19, 2018. Doc. 29 at ¶ 20; Doc. 30-13. Allen informed Pessima that his case could be "referred to a prosecutor for court action" if he failed to make a payment of $4,656 by March 17, 2019. Doc. 29 at ¶ 21. Pessima failed to make any additional payments, so Allen referred his case to Special Assistant Attorney General Jim Carlon on April 9, 2019. Doc. 29 at ¶ 22. Carlon has not been served with process in this case, but is identified by job description in the caption. Doc. 29 at ¶ 22.

On April 26, 2019, Allen signed an affidavit and application for issuance of a bench warrant ("warrant affidavit") based on Pessima's failure to resume child support payments and failure to pay previously ordered support obligations. Doc. 29 at ¶ 23; Doc. 30-14. The warrant affidavit was filed in state court on May 14, 2019. Doc. 29 at ¶ 24. That same day, Carlon provided notice to Pessima that the State had applied for a bench warrant for Pessima's arrest. Doc. 29 at ¶ 24; Doc. 30-15.

A state judge issued a bench warrant for Pessima's arrest on May 29, 2019. Doc. 29 at ¶ 25; Doc. 30-16. Pessima was arrested and later released from custody on a personal recognizance order on August 19, 2019. Doc. 29 at ¶ 26; Doc. 30-17. This order conditioned Pessima's release on his agreement to "resume child support payments" and "maintain child support payments in accordance with the most recent order for child support." Doc. 30-17. The order also informed Pessima that DSS had authority to seek a bench warrant for his arrest if he failed to comply with his child support obligations. Doc. 30-17.

3

Pessima made a child support payment of $310 on August 28, 2019, but failed to make a payment in September 2019.[2]  Doc. 29 at ¶¶ 27–28; Doc. 30-7 at 7.  Allen thus executed another affidavit and application for issuance of a bench warrant on October 9, 2019.  Doc. 29 at ¶ 30; Doc. 30-18.  This warrant affidavit stated that Pessima had violated the personal recognizance order by failing to resume child support payments and pay support as ordered.  Doc. 29 at ¶ 30; Doc. 30-18.  The warrant affidavit was filed in state court on October 24, 2019, and Carlon mailed Pessima notice of the application that same day.  Doc. 29 at ¶¶ 30–31; Docs. 30-18, 30-19.  On November 5, 2019, a state court judge issued a bench warrant for Pessima's arrest for failing to comply with the personal recognizance order.  Doc. 29 at ¶ 32; Doc. 30-20.  Pessima was arrested on November 17, 2019, and was released by court order the following day.  Doc. 29 at ¶ 33; Doc. 30-21.  The state court judge cautioned Pessima that if he failed to make monthly payments, a new arrest warrant would be issued.  Doc. 29 at ¶ 33.

## II.     Pessima's claims against Carlon are dismissed without prejudice.

Carlon argues that any claims against him must be dismissed because he has never been served with Pessima's complaint.  Docs. 27, 28.  Rule 4(m) of the Federal Rules of Civil Procedure requires a plaintiff to serve the defendant within 90 days of filing the complaint.  Fed. R. Civ. P. 4(m).  If the plaintiff fails to serve the defendant within this time, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Id.  If the plaintiff can show good cause for failing to effect service in a timely manner, however, the court "must extend the time for service for an appropriate period."  Id.

---

[2]Pessima alleges in his complaint that he was arrested in September 2019, but, if so, it was not for his non-payment of child support.  The undisputed facts show that Pessima was not arrested in September 2019 for failure to pay child support.  Doc. 29 at ¶ 29.

Pessima filed his complaint and a motion to proceed in forma pauperis (IFP) in mid-December 2019. Docs. 1, 3. On April 9, 2020, this Court entered an order granting Pessima's motion to proceed IFP and screening his complaint. Doc. 8. In the order, this Court explained that Pessima should complete a separate summons and USM-285 form for each Defendant, and that a failure to submit these documents as directed could result in the complaint being dismissed. Doc. 8 at 4. A summons was issued for service upon Carlon on April 28, 2020, Doc. 10, but it was returned unexecuted, Doc. 11. Carlon has thus not been served in this case. Doc. 29 at ¶ 22. He moved to dismiss the complaint on November 13, 2020. Docs. 27, 28. Pessima did not respond to Carlon's argument that the complaint against him should be dismissed under Rule 4(m). Doc. 31. It has now been over a year since this Court screened the complaint, and Pessima has made no attempt to show good cause or excusable neglect for failing to serve the complaint in a timely manner. As such, Carlon's motion to dismiss is granted.

## III.   Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) places the burden initially on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Once the moving party has met that burden, the nonmoving party must establish that a material fact is genuinely disputed either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir.

2005) (stating that a nonmovant may not merely rely on allegations or denials). A party opposing a properly supported motion for summary judgment "may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor, without resort to speculation, conjecture, or fantasy." Reed v. City of St. Charles, 561 F.3d 788, 790–91 (8th Cir. 2009) (cleaned up and citations omitted). In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

## IV.   Analysis

Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Under § 1983, state officials may be sued in their individual capacities, their official capacities, or both. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). Individual and official capacity suits differ in both their pleading requirements and the defenses available to the official. See Hafer v. Melo, 502 U.S. 21, 25 (1991).

Here, Pessima's complaint does not specify in what capacity he is suing Allen and Christensen. When a complaint is silent or ambiguous about the capacity in which the plaintiff is suing the defendant, courts in the Eighth Circuit presume that the plaintiff is bringing only official-capacity claims. Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997) ("[A]bsent a clear statement that officials are being sued in their personal capacities, we interpret the complaint as including only official-capacity claims." (cleaned up and citation omitted)); Mick v. Raines, 883 F.3d 1075, 1079 (8th Cir. 2018) ("[I]n order to sue a public official in his or her individual capacity,

a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." (citation omitted)). Although pro se complaints should be liberally construed, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), this requirement that individual-capacity claims be specifically plead still applies to pro se plaintiffs, Taylor v. Roper, 83 F. App'x 142, 143 (8th Cir. 2003) (per curiam); Brave Bird v. South Dakota, No. CIV 11-3012-RAL, 2012 WL 2126950, at *2 (D.S.D. June 11, 2012).   Since Pessima's complaint is silent on the capacity in which he is suing Allen and Christensen, this Court presumes that he is suing them in their official capacities only.

A.    **Pessima's Claims Fail.**

Only certain types of relief are available in suits against state officials in their official capacity.  Pessima's complaint is not clear on the relief he seeks.  In the section of the complaint entitled "Relief," Pessima states that someone must be held responsible for his "pain and suffering" and asks "for anything that the court may decide that is just and equitable according to law." Doc. 1 at 5.  Pessima cannot recover damages from Allen and Christensen because he is suing them in their official capacities.  A suit against a state employee in his or her official capacity is treated as a suit against the state for which the employee works. Kentucky v. Graham, 473 U.S. 159, 166 (1985).   Absent consent by the state or congressional abrogation of immunity, the Eleventh Amendment generally bars federal-court lawsuits seeking monetary damages from states or state officers in their official capacities. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Edelman v. Jordan, 415 U.S. 651, 662–63 (1974); Treleven v. Univ. of Minn., 73 F.3d 816, 818 (8th Cir. 1996).  South Dakota has not consented to official capacity suits under § 1983 for money damages, § 1983 did not abrogate South Dakota's Eleventh Amendment immunity, and the Defendants have raised Eleventh Amendment immunity as a defense in this case. Doc. 13 at ¶ 10;

Doc. 28 at 3–4.  Moreover, neither a state nor its officials acting in their official capacities are considered "persons" who may be sued for money damages under § 1983.  Will, 491 U.S. at 71.

However, suits against state employees in their official capacities that seek only prospective, injunctive relief are allowed by § 1983, Will, 491 U.S. at 71 n.10 (explaining that state officials are "persons" under § 1983 when sued for injunctive relief in their official capacities), and are not barred by the Eleventh Amendment, Ex Parte Young, 209 U.S. 123, 157–60 (1908) (explaining that state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment).  "In determining whether the doctrine of Ex Parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (cleaned up and citation omitted).  This inquiry "does not include an analysis of the merits of the claim."  Id.

Even if this Court construed Pessima's complaint as seeking prospective injunctive relief against the Defendants, Pessima has not adequately alleged an ongoing violation of federal law.  Pessima does not claim that Allen and Christensen are currently violating federal law or that any violation is imminent.  Although he alleges that he was unlawfully arrested in the past, these allegations do not fall within the Ex Parte Young exception.  See Papasan v. Allain, 478 U.S. 265, 277–78 (1986) ("Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . .").

Pessima also lacks standing to seek injunctive relief.  As the plaintiff, Pessima bears the burden of establishing that he has standing under Article III of the Constitution to request

8

injunctive relief. Park v. Forest Serv. of U.S., 205 F.3d 1034, 1036–37 (8th Cir. 2000). To demonstrate standing, Pessima must establish an injury in fact; a causal connection between the injury and the alleged conduct of the Defendants; and a likelihood that the remedy he seeks will redress the alleged injury. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102–03 (1998). When a plaintiff is seeking injunctive relief, "the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm." Park, 205 F.3d at 1037. Evidence that a plaintiff suffered an injury in the past does not alone establish that the plaintiff has standing to seek injunctive relief. See O'Shea v. Littelton, 414 U.S. 488, 495–96 (1974) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects"). A plaintiff's speculation that he may suffer injury in the future is likewise insufficient. City of L.A. v. Lyons, 461 U.S. 95, 102 (1983) (explaining that a "conjectural" or "hypothetical" threat of injury does not establish standing). Instead, as the Supreme Court made clear in Lyons, the plaintiff must show that "the injury or threat of injury" is "'real and immediate'" to have standing to seek injunctive relief. Id.

In Lyons, the plaintiff sought injunctive relief barring police officers from the City of Los Angeles from using chokeholds unless suspects were threatening the officers with the immediate use of deadly force. Id. at 98. The Supreme Court held that the plaintiff did not have standing to seek such relief because he had failed to demonstrate that there was a sufficient likelihood that the police would subject him to a chokehold in the future. Id. at 105–110. Although the plaintiff had been subjected to a chokehold in the past and alleged that the police officers routinely applied chokeholds when they were not threatened by deadly force, the Supreme Court concluded that these facts fell short of establishing that the plaintiff faced a real and immediate threat of future

9

harm. Id. 105–106.  Like the plaintiff in Lyons, Pessima has failed to demonstrate that there is a sufficient likelihood that he will suffer harm from being wrongfully arrested in the future for failing to pay child support.

Regardless, Defendants would be entitled to summary judgment even if Pessima had standing and he could satisfy Ex Parte Young.  Pessima's claim seems to be that Allen wrongfully had him arrested and incarcerated for failing to pay child support when he was in fact complying with all his payment obligations.[3]  Doc. 1 at 4; Doc. 2; Doc. 31 at 1.  He asserts in his affidavit that Allen arranged for his arrest and detention "under the pretext" that he had not complied with his child support obligations when the "records verify[] that (indeed) I have been paying."  Doc. 2 at 1.  He alleges that Christensen acted wrongfully by failing to realize that he was complying with his child support obligations.  Doc. 1 at 4; Doc. 2 at 1.

A state official violates the Fourth Amendment if she submits a warrant affidavit containing a "deliberate falsehood" or acts with a "reckless disregard for the truth" in preparing it.  Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996) ("A warrant based upon an affidavit containing deliberate falsehood or reckless disregard for the truth violates the Fourth Amendment.  An official who causes such a deprivation is subject to § 1983 liability." (cleaned up and citation omitted)).  The record here would not allow a reasonable juror to find that Allen included deliberate falsehoods in the two warrant affidavits or that she acted with a reckless disregard for the truth when preparing them.  The warrant affidavit Allen completed in April 2019 stated that Pessima had failed to resume child support payments and pay support as ordered.  Doc. 30-14.  This

---

[3]Pessima's complaint also alleges that the officer who arrested him in November 2019 refused to show him the arrest warrant.  Doc. 1 at 4.  If Pessima is claiming that this arrest was warrantless, the undisputed facts show that a state court judge did, in fact, issue a warrant for Pessima's arrest. Doc. 29 at ¶ 32; Doc. 30-20.

statement was accurate; the affidavit of arrears Defendants filed shows that Pessima did not make any payments in 2019 until August of that year. Doc. 30-7 at 7. The warrant affidavit Allen completed on October 9, 2019, stated that Pessima had violated the personal recognizance order by failing to resume child support payments and pay support as ordered. Doc. 29 at ¶ 30; Doc. 30-18. Again, this statement was accurate; the personal recognizance order required Pessima to make timely child support payments and the affidavit of arrears shows that while Pessima made payments in August 2019 and October through December of 2019, he never made a payment for September of that year. Doc. 30-7 at 7; Doc. 30-17.

Pessima's affidavit is not enough to create a genuine issue of material fact on whether the warrant affidavits contained deliberate falsehoods or Allen acted with a reckless disregard for the truth when preparing them. It is true, of course, that courts ruling on a summary judgment motion must view the evidence in the nonmoving party's favor and may not weigh the evidence or make credibility determinations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc., 887 F.3d 438, 442 (8th Cir. 2018). At the same time, it is "black letter summary judgment law that a conclusory, self-serving affidavit will not defeat an otherwise meritorious summary judgment motion." Keiran v. Home Cap., Inc., 858 F.3d 1127, 1132 (8th Cir. 2017). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Chavero-Linares v. Smith, 782 F.3d 1038, 1041 (8th Cir. 2015) (citation omitted). Here, Pessima stated in his affidavit that "the records" verify that he was current on his child support payments, that he has "done nothing wrong" to warrant his arrest, and that the state court judge said there was "no reason" for him to be arrested when she ordered his release on November 18, 2019. Doc. 2 at 1–2. Pessima did not file any records showing that he made any payments before August 2019 or paid for the month of

11

September 2019 and any statement by the state court judge would be inadmissible hearsay. The conclusory, self-serving statements in Pessima's affidavit would not permit a jury finding in his favor.

### B.   Pessima's remaining motions are denied.

Pessima filed a brief opposing summary judgment on November 30, 2020. Doc. 31. On that same day, he also filed a motion requesting a pretrial hearing. Doc. 32. Pessima's brief in support of the motion mentions placing some unreturned phone calls to Defendants' attorney but does not otherwise explain why a pretrial hearing is necessary. Doc. 33. In a supplement to the motion Pessima filed a few days later, he cites to federal immigration laws and claims that he does not owe any child support because he paid for the child's medical insurance. Doc. 35. Pessima owes child support under a 2006 divorce decree and several judgments entered in state court. Doc. 29 at ¶¶ 5–7; Doc. 30 at ¶¶ 5–7. This Court does not have jurisdiction to review and reject the state court judgments entered well before Pessima filed this case. See Gittens v. Kelly, 790 F. App'x 439, 441 (3d Cir. 2019) (per curiam) (holding that the Rooker-Feldman doctrine deprived the district court of jurisdiction where plaintiff claimed that he was injured by a state court judgment that required that he pay child support, the judgment predated his federal complaint, and he asked the district court to invalidate that judgment). Because a hearing is unnecessary to resolve Defendants' motion for summary judgment, this Court denies Pessima's motion for a hearing.

Pessima filed a motion for 90-day leave to secure an attorney on December 7, 2020. Doc. 36. In his supporting brief, Pessima repeated his belief that he does not owe any child support because he paid for the child's medical insurance and asks for 90 days to "secure an attorney to represent him at Trial." Doc. 37. Because more than 90 days has passed since Pessima filed his December 7, 2020 motion, the motion is denied as moot.

On March 9, 2021, Pessima filed a motion for a continuance so that he could obtain an attorney. Doc. 39. Pessima filed an amended motion for a continuance three days later, this time asking for the "assistance of a Magistrate during deliberations with Defendants and their attorneys." Doc. 41. This Court denies both motions. Pessima already had ample time to secure an attorney but failed to do so. Moreover, Pessima has already responded to the motion for summary judgment and the undisputed facts show that his § 1983 claim against Defendants fails.

## V.    Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendants' Motion for Summary Judgment, Doc. 27, is granted. It is further

ORDERED that Plaintiff's Motion for Pretrial Hearing, Doc. 32, Motion for 90-Day Leave, Doc. 36, Motion to Continue, Doc. 39, and Amended Motion to Continue, Doc. 41, are denied.

DATED this 29ᵗʰ day of April, 2021.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

13